MARGARET J. KELLY, complainant-respondent,

*v.*

GUARANTEE TRUST COMPANY, trustee, defendant-appellant.

[Submitted May 26th, 1933. Decided September 27th, 1933.]

*Messrs. Cole & Cole,* for the appellant.

*Messrs. Starr, Summerill & Lloyd,* for the respondent.

The opinion of the court was delivered by

HETFIELD, J.

The question raised in the present suit, is whether an agreement entered into by the interested parties obligates the appellant to advance or loan to the respondent, the sum of $6,000 annually, until such time as the purpose for which the document was made is accomplished. The undisputed facts, as disclosed by the record, show that the respondent was the owner of considerable property, both real and personal, the major portion thereof having been devised and bequeathed to her under the will of her husband, John L. Kelly, whose estate was indebted to such an extent that the cash funds on hand were insufficient to satisfy or pay its obligations. The respondent, in order to conserve the assets of the estate against a probable loss which would result in the event of a forced liquidation, entered into a trust agreement with the appellant, and conveyed to it, in trust, six parcels of real estate situated in or near Atlantic City, all of which were subject to mortgages, and also transferred and assigned certain securities and obligations due the estate. The document creating the trust was executed by the parties on the 16th day of December, 1927, and according to its terms, the trustee had absolute control of the real and personal property therein enumerated, with respect to the disposition of same, and the collection of any income received therefrom. The proceeds were to be applied in paying and liquidating the indebtedness of the estate, as well as any and all loans made by the appellant to the respondent, pursuant to that portion of the agreement, the true interpretation and meaning of which is involved in this litigation, which reads: "To pay to the said party of the first part, either from the

principal or income in the hands of the trustee, or to loan to her, a sum not to exceed six thousand ($6,000) dollars per annum, until all the obligations of the said John L. Kelly which may be proved as legal claims against his said estate, are satisfied, except such mortgages as said trustee may elect to allow to remain on the real estate owned by the said John L. Kelly, at the time of his death, or, on the real estate now owned by the said party of the first part, after which time and upon settlement of the account of the executors of the estate of John L. Kelly, to pay all the net income from said trust to the said party of the first part, during her life." The agreement further provided that the trustee should receive as compensation for its services in the administration of the trust, a fee of $25,000, to be paid over a period of three years in semi-annual installments, after which time it would be paid a commission of five per cent. per annum upon the income received. The first fee was to be deducted from any funds in the hands of the trustee, and the subsequent commission from the income payable to the respondent. The annuity of $6,000 provided for in the agreement, was paid to the respondent in monthly installments of $500 each, until February 1st, 1930, when the payments were discontinued, because of the depreciation of the assets held by the trustee. At the time the appellant ceased making these payments to the respondent, she had received from the trust, $12,500, and the trustee had paid itself $16,666.68 on account of its fee for services, the payment of the balance to which it was then entitled, not being made for the same reason that the payments to the respondent were stopped. The proof, which is not controverted, shows that the various charges against the trust estate were always in excess of the income, and in order to pay same, the appellant loaned or advanced to the trust, money for that purpose, until it appeared that the entire assets did not have a sufficient value to reimburse the appellant for such advances, and that the appellant would be unable to recover from the trust fund, the money already loaned to it. It further appears that all of the obligations of the decedent, John L. Kelly, have not as yet been satisfied, there

still remaining due and unpaid, because of insufficient funds, the sum of $15,825, represented by two notes held by the Ventnor City National Bank.

The respondent contends that the appellant, by the terms of the agreement, is legally bound to loan her $6,000 annually, until such time as all legal claims against the estate of her husband are satisfied, excepting mortgages, irrespective of whether or not the assets in the trust are of sufficient value to reimburse the appellant, and in her bill of complaint prays: "That the said Guarantee Trust Company, trustee, as defendant, may be decreed to pay to the complainant either from the principal or income in its hands, as trustee, or loan to the complainant a sum not exceeding $6,000 per annum, from the 1st day of February, 1930, until such time as all of the obligations of said John L. Kelly, which may be proved as legal claims against his estate, be satisfied, and the account of the latter has been settled." The defense interposed by the answer, alleges in substance, that a correct and proper interpretation of the agreement does not obligate the appellant to pay or loan the respondent the money as she alleges. The court of chancery, after hearing, granted the respondent the relief she sought; and the final decree from which this appeal is taken, reads in part, as follows: "And it is further ordered, adjudged and decreed that in case the said defendant does not have in its hands any principal or income from the real or personal property as aforesaid, arising by virtue of the agreements aforesaid, from which to pay to the said complainant the sum of six thousand dollars ($6,000) per annum from the 1st day of February, 1930, and thereafter until all the obligations of the said John L. Kelly, which may be proved as legal claims against his estate, are satisfied and the account of the said estate has been settled, that then said amount of six thousand dollars ($6,000) per annum shall be loaned and paid by the said defendant, to the said complainant, as follows: Six thousand dollars ($6,000) to be loaned to the complainant as of the 1st day of February, 1931, and another sum of six thousand dollars ($6,000) to be loaned as of the 1st day of February, 1932, and on the 1st

day of February, 1933, there be loaned to the said complainant the sum of six thousand dollars ($6,000) and said loans shall continue at the rate of six thousand dollars ($6,000) per annum, as of the 1st day of February of each and every year thereafter until all the obligations of the said John L. Kelly, which may be proved as legal claims against his estate, are satisfied and the account of the said estate has been settled."

If the respondent's contention is sound, and the lower court's interpretation of the contract was a proper one, the appellant bank is faced with this situation: it will be compelled to loan to the respondent the sum of $18,000 immediately, and the further sum of $6,000 on the first day of February of each and every year, until all the obligations of her husband's estate are satisfied, which according to the undisputed proofs submitted, would probably mean an annuity of $6,000 during her natural life; and in the event she survived for a period of twelve years, the loans would approximate $100,000, with no prospects of any portion thereof being returned to the bank. There is no evidence to indicate that the respondent has any property, other than her interest in the trust fund, the assets of which are inadequate to pay the appellant the loans already made, or the debt due the Ventnor City National Bank.

It is difficult to conceive that either of the parties ever contemplated or intended that the appellant bank should be obligated to this extent; and if the construction placed on the contract by the court below truly represents one of the purposes for which the trust was created, we think the agreement would then be illegal and void, because it is contrary to public policy and unlawful for a banking institution to enter into an agreement whereby its funds will be willfully and corruptly misapplied, by making loans to persons known by its officers to be insolvent and unable to return the amount advanced. It would be a clear and palpable violation of duty on their part, to approve of any such action, and they would be liable for losses resulting therefrom. *Prudential Trust Co.* v. *Brown, 271 Mass. 132; 171 N. E. Rep. 42.* A contract

of this character is inimical to safe and sound banking, and if enforced by the courts, would tend to destroy the confidence of the public in banking institutions. In *Jones* v. *Randall, 1 Cowp. 37,* Lord Mansfield and the court of King's Bench, held that "many contracts which are not against morality, are still void as being against the maxims of sound policy."

In construing a contract, it is necessary to ascertain what the parties thereto meant, intended and understood as determined by the words employed, and, as an aid in this respect, the object of the parties in making it may be taken into consideration. *Colorado Fuel & Iron Co.* v. *Pryor, 25 Col. 540; 57 Pac. Rep. 51.* When one interpretation of a contract would render it legal, and another illegal, the courts will adopt that construction which will not impute to the parties an intention to violate the law. *Briody* v. *De Kimpe, 91 N. J. Law 206.* We think that all the facts tend to show, with convincing certainty, that the purpose in creating the trust, was not one which contemplated that the officers of the bank would be called upon to violate their duty if the occasion required it, for the sole benefit of the respondent. The object, in our opinion, was to avoid a hasty liquidation, which would result in a great loss to the respondent. It was never anticipated that the trust fund would be insufficient to pay the obligations; and this fact is indicated by the terms of the trust, which provided for the disposition of the income during the respondent's life, and the *corpus* after her death, after the debts were satisfied. We conclude that a fair and reasonable interpretation of the contract, and one which would make it a rational, legal and probable agreement, is that it was the intent and purpose of the parties, that if, and so long as, the market value of the securities was such that the interest of the respondent in same, after all debts and obligations of the estate had been satisfied, was sufficient to warrant an advance or loan, on said interest, the appellant, in the event that there were insufficient cash funds on hand to make the annual payment, as provided, would advance the sum required for that purpose, in which case it would be fully protected.

The decree under review will be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ.  14.